UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


**SAMUEL JACOB HANNING,**

    **Plaintiff,**

                                                                   Civil Action 2:17-cv-545
                                                                    Judge George C. Smith
    v.                                                            Magistrate Judge Chelsey M. Vascura


**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**


### REPORT AND RECOMMENDATION

Plaintiff, Samuel Jacob Hanning ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Disability Insurance Benefits and Supplemental Security Income. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Response in Opposition (ECF No. 15), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

                                                  **I.    BACKGROUND**

Plaintiff protectively filed his application for Disability Insurance Benefits on March 10, 2014, and for Supplemental Security Income on July 28, 2014. In his application for Disability Insurance Benefits, Plaintiff alleged a disability onset of May 12, 2009. Plaintiff's application

was denied initially on May 30, 2014, and upon reconsideration on August 18, 2014. Administrative Law Judge Kevin J. Dethrage ("ALJ") held a video hearing on March 9, 2016, at which Plaintiff, represented by counsel, appeared and testified. Vocational Expert Jerry A. Olsheski (the "VE") also appeared and testified at the hearing. On May 3, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On April 25, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In his Statement of Errors, Plaintiff challenges the ALJ's evaluation of the three record opinions relating to his mental impairments, namely, the opinions of consultative examiner Dr. Gary S. Sarver, Ph.D., and the state agency reviewing psychologists, Drs. Bonnie Katz, Ph.D., and Mark K. Hill, Ph.D. More specifically, Plaintiff contends that (1) the ALJ's decision fails to reflect that he considered the factors set forth in 20 C.F.R. § 404.1527(c) in assessing these opinions; (2) the ALJ failed, without explanation, to incorporate limitations Dr. Sarver opined even though he had accorded his opinion significant weight, and (3) the ALJ failed to sufficiently articulate why he concluded that he was not as functionally limited in social interaction as Drs. Katz and Hill opined.

In her Memorandum in Opposition, the Commissioner asserts that the ALJ was not required to explicitly discuss each of the factors set forth in § 1527(c) and submits that the ALJ did not err in his weighing and consideration of the opinion evidence. The Commissioner further maintains that the ALJ properly evaluated Dr. Sarver's opinion and that the RFC he assessed accommodates the limitations Dr. Sarver opined.

2

## II. RELEVANT RECORD EVIDENCE

In April 2014, Plaintiff presented to Gary S. Sarver, Ph.D., for a psychological consultative evaluation. Following an examination, Dr. Sarver diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood and social anxiety disorder. (R. at 269.) In the "Functional Assessment" portion of his evaluation, Dr. Sarver opined that although Plaintiff's "level of intellectual functioning suggests that he should have no particular difficulty in understanding, remembering, or carrying out simple job instructions," his social anxiety is likely to significantly intrude upon [his] capacity [to] carry out both simple as well as complex job instructions." (*Id*.) Dr. Sarver further opined that Plaintiff's "social anxiety is likely to episodically intrude upon his attentional pace and persistence and to attenuate his capacity to perform multistep tasks" and that it is likely that "he will eventually encounter problematic relationships with supervisors and coworkers in the work setting." (R. at 269-70.) Finally, Dr. Sarver opined that Plaintiff's "concomitant poor coping skills make[] it difficult for him to adaptively self-comfort and manage and contain his anxiety appropriately" such that it will be "difficult for him to productively adapt to normative work stressors." (R. at 270.)

One month later, in May 2014, state agency reviewing psychologist Bonnie Katz, Ph.D., reviewed the record and concluded that Plaintiff was "[c]apable of performing simple, routine tasks in a solitary setting without fast-paced performance demands"; could function "in a setting that requires no contact with the general public, and only infrequent, brief and superficial contact with a small number of familiar coworkers and supervisors"; and was "able to adapt in a static work setting with infrequent changes in duties, where changes are introduced in advance and explained fully." (R. at 75-76.) In August 2014, state agency reviewing psychologist Mark K.

Hill, Ph.D., reviewed the record on reconsideration and confirmed Dr. Katz's findings, adding that Plaintiff is "[c]apable of performing 1-3 step tasks without fast-paced performance demands." (R. at 89-90.)

At the hearing, Plaintiff testified that he previously worked for Bellisio Foods, performing "pack out" duties. (R. at 36-37.) He explained that he would "sort the entrees onto the conveyor belt and it would box them and then the boxes would go on the pallet." (R. at 37.) Plaintiff testified further that Bellisio Foods had a "strict attendance policy" and that he quit the position because he believed he would be fired for missing too much work. (R. at 39.) When asked by the ALJ why he was missing work, Plaintiff stated it was "because of my conditions, my anxiety and depression, and my asthma and stuff like that." (*Id.*) When asked about his daily activities, Plaintiff testified that he is not normally able to go grocery shopping due to anxiety and disliking crowds and grocery stores, and that he generally just does not want to be around people. (R. at 46-47.) Plaintiff also testified that he currently has one remaining friend, but that he can "get along with people." (R. at 50-51.)

The VE classified Plaintiff's past work under the *Dictionary of Occupational Titles* ("*DOT*") as: fast food worker, *DOT* 311.472-010, classified at the light level of exertion and unskilled, with a specific vocational preparation level ("SVP") of 2; machine packer, *DOT* 920.685-078, classified at the light level of exertion and unskilled, with an SVP of 2; and cashier, *DOT* 211.462-010, classified at the light level of exertion and unskilled, with an SVP of 2. The ALJ asked the VE to consider a hypothetical individual with Plaintiff's age, education, and

vocational profile who retained the residual functional capacity ("RFC")[1] that the ALJ ultimately assessed, with the additional limitation that the work is "unskilled." (R. at 58-61). The VE testified that such an individual could perform Plaintiff's past work as a machine packer, as well as other jobs that exist in significant numbers in the national economy. Upon cross-examination by Plaintiff's counsel, the VE testified that the addition of a limitation requiring "no contact with the general public and either infrequent, brief, and superficial contact with familiar coworkers and supervisors or an area by himself" or being off task "at least 25 percent" of the time would be work preclusive. (R. at 62-63.)

### III.   THE ADMINISTRATIVE DECISION

On May 3, 2016, the ALJ issued his decision. (R. at 13-24.) The AJL first found that Plaintiff meets the insured status requirements through December 31, 2014. At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial

---

1. A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

2. Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

   1. Is the claimant engaged in substantial gainful activity?

   2. Does the claimant suffer from one or more severe impairments?

   3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

   4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5

gainful activity since May 12, 2009, the alleged onset date. (R. at 15.) The ALJ found that Plaintiff had the severe impairments of lumbar degenerative disc disease, anxiety disorder, affective disorder, obesity, hearing impairment, right knee strain, and asthma. (*Id.*) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: The claimant may never climb ladders, ropes or scaffolds, but [c]an occasionally climb ramps or stairs. He should avoid exposure to hazards, such as heights or machinery with moving parts. He should avoid concentrated exposure to dust, fumes, gases, odors, or poorly ventilated areas. The claimant is unable to perform production rate pace work. He can tolerate occasional changes in a routine work place setting. He is limited to occasional contact with co-workers, supervisors, and the general public. This individual is likely to be absent from work one day per month. The clamant should not perform jobs which require telephone communication.

(R. at 18.) In calculating Plaintiff's mental RFC, the ALJ relied upon the opinions of consultative examiner Dr. Sarver and state agency reviewing psychologists, Drs. Katz and Hill. The ALJ assigned "significant weight" to Dr. Sarver's opinion and only "partial weight" to opinions of Drs. Katz and Hill. (R. at 21-22.)

The ALJ concluded that Plaintiff could perform his past relevant work as a machine

---

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); see also *Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

packer, reasoning as follows:

> The claimant is able to perform past relevant work as a machine packer worker, 920.685-078, which is described in the *Dictionary of Occupation Titles* as unskilled work with a specific vocational preparation level (SVP) of 2, and which is generally performed at the medium exertional level in the national economy. Accordingly, the claimant is able to perform his past relevant work.
>
> The testimony of the vocational expert and the claimant, along with the other evidence, supports a finding that this work occurred within the past fifteen years, at substantial gainful activity, and for a duration that would allow the claimant to learn the job.
>
> Upon questioning, the vocational expert testified that if an individual had the claimant's residual functional capacity, such an individual could perform the claimant's past relevant work. Therefore, I find that the clamant could perform his past relevant work as machine packer as generally and actually performed.
>
> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the *Dictionary of Occupational Titles* (DOT).

(R. at 22-23 (internal citations to the record omitted).)

Relying on the VE's testimony, the ALJ also found that Plaintiff could perform other jobs that exist in significant numbers in the economy. (R. at 23-24.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 24.)

## IV.     STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

As set forth above, Plaintiff maintains that the ALJ erred in his consideration of the three record opinions relating to his mental impairments because the ALJ failed to explicitly consider the factors set forth in 20 C.F.R. § 404.1527(c) and failed to explain why he omitted limitations Dr. Sarver opined and the limitations relating to social interaction that Drs. Hill and Katz opined.

8

The undersigned finds these contentions of error to be unpersuasive.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c); *see also* SSR 96–8p 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions."). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). The regulations provide that where, as here, there is no opinion from a treating physician, the ALJ must explain the weight assigned to the opinions of the available medical sources:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 416.927(e)(2)(ii).

Regardless of the source of a medical opinion, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. *See also* 20 C.F.R. § 404.1527(c) (identifying the same factors for evaluating medical opinion evidence).

But contrary to Plaintiff's assertion, an ALJ is not required to discuss each factor in 20 C.F.R. § 404.1527(c) when weighing the opinion evidence. *Tilley v. Comm'r of Soc. Sec.*, No.

9

09-6081, 2010 WL 3521928, at *6 (6th Cir. Aug. 31, 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision); *see also Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (holding that "[a]lthough the regulations instruct an ALJ to consider [the § 404.1527] factors," they do not require "an exhaustive factor-by-factor analysis"); *Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion."). Moreover, the ALJ's decision reflects that he properly considered the relevant factors. For example, in evaluating Dr. Sarver's opinion, the ALJ noted that Dr. Sarver is a consultative examiner who has his Ph.D, that the examination took place in April 2014, and that the opinion was consistent with Plaintiff's testimony. (*See* R. at 21.) Further, in his evaluation of the opinions of Drs. Katz and Hill, the ALJ discussed the supportability of the opinions based on the tests employed, as well as the consistency with the record as related to social interaction. (*See* R. at 22.) Although Plaintiff may disagree with the ALJ's evaluation of the medical source opinions, the argument that reversal is required due to the ALJ's failure to expressly consider the § 404.1527(c) factors is without merit.

Plaintiff's assertion that reversal is required because the ALJ failed to explain his bases for omitting limitations Dr. Sarver opined also lacks merit. According to Plaintiff, the ALJ failed to incorporate Dr. Sarver's opined limitations relating to his ability to carry out simple and complex instructions, episodic intrusions on attentional pace and persistence and the ability to perform multistep tasks, likelihood of problematic relationships with supervisors and coworkers,

10

and difficulty adapting to workplace changes and stressors.  (*See* Pl.'s Statement of Errors 12, ECF No. 13 (citing R. at 269-70).)   The undersigned finds that the ALJ did accommodate the limitations Dr. Sarver opined.   Review of Dr. Sarver's opinion reflects that he opined that Plaintiff had limitations in several areas due to social anxiety.   The ALJ addressed the limitations Dr. Sarver identified as flowing from Plaintiff's social anxiety by limiting Plaintiff's interaction with co-workers, supervisors, and the general public, as well as providing for one day's absence per month and precluding production rate pace work and telephone communication.   Notably, Dr. Sarver did not opine that Plaintiff required greater limitation in social interaction, such as no contact or only superficial contact.   The ALJ also accommodated the adaptive deficits Dr. Sarver opined by limiting Plaintiff to a routine work place setting with only occasional changes.   Significantly, Dr. Sarver did not opine that Plaintiff had limitation in his ability to understand, remember, and carry out simple job instructions apart from the limitations attributable to his social anxiety, which, as set forth above, the ALJ accommodated.

   Regardless, even assuming that the ALJ erred in not explaining why he declined to limit Plaintiff to jobs involving simple instructions, that error was harmless because the VE testified that Plaintiff could perform his past work and other significant work *even with the additional limitation of unskilled work*.   (*See* R. at 58-61.)   Consistently, the VE testified that Plaintiff's past job of machine packer is classified unskilled and performed at SVP level 2, (R. at 58), and also that the other jobs he identified are classified as unskilled, (R. at 59-60).   *See also* 20 C.F.R. §§ 404.1568(a) and 416.968(a) (defining "unskilled work" as "simple" in that it "needs little or no judgment to do simple duties that can be learned on the job in a short period of time"); *DOT* 920.685-078 (classified as SVP 2); SSR 00-4p ("[U]nskilled work corresponds to an SVP of 1-

2."). Thus, even if the ALJ erred in failing to explain why the RFC he assessed did not limit Plaintiff to unskilled work, that error was harmless such that reversal is not warranted. *See, e.g.*, *Wills v. Colvin*, No. 14-C-960, 2016 WL 1060254, at *9 (E.D. Wis. Mar. 15, 2016) (finding harmless error where limitations were omitted, but the representative jobs the VE identified were unskilled, explaining "[s]ince unskilled jobs are by definition 'simple, routine, and repetitive,' the omission from the hypothetical of these limitations is harmless" (citation omitted)); *Riley v. Comm'r of Soc. Sec.*, No. 3:11-cv-194, 2012 WL 553123, at *8 (S.D. Ohio Feb. 21, 2012) (ALJ's failure to include certain RFC limitations is harmless error where the claimant could still perform her past relevant work despite these limitations); *see also Kobetic v. Comm'r*, 114 F. App'x 171, 173 (6th Cir. 2004) ("When remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." (internal quotation marks and citation omitted)).

Finally, the undersigned concludes that the ALJ did not erroneously fail to explain why he omitted the limitations relating to social interaction that state agency reviewers Drs. Hill and Katz opined. As set forth above, the ALJ assigned "partial weight" to the opinions of Drs. Hill and Katz. (R. at 22.) Notably, in some regards, the ALJ found Plaintiff to be *more* limited than Drs. Hill and Katz opined. And contrary to Plaintiff's assertions, the ALJ *did* explain why he concluded that Plaintiff was "not as functionally limited in social interaction," (Pl.'s Statement of Errors 13, ECF No. 13), as Drs. Hill and Katz opined. In particular, the ALJ pointed out that Plaintiff "was able to do most daily activities," including shopping. The ALJ also reasoned that "[o]verall, the evidence generally did not support the alleged loss of function to the extent claimed by the claimant" and that although "[h]is biggest problem was depression and anxiety,"

12

Plaintiff "was not receiving any regular health counseling and was just on medication." (R. at 22.) The ALJ reasonably considered Plaintiff's activities of daily living, the record evidence as a whole, and the minimal treatment Plaintiff's received for his alleged disabling mental impairments in evaluating Drs. Hill and Katz's opinions regarding the severity of Plaintiff's social impairment. *See* 20 C.F.R. §§ 416.927(c) and 404.1527(c) (identifying consistency of the opinion with the record as a whole as a relevant factor in evaluating medical opinion evidence); S.S.R. 96–8p, 1996 WL 374184, at *6–7 (ALJ required to consider nonmedical evidence such as a claimant's daily activities in assessing the RFC); *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (concluding that ALJ reasonably discounted a doctor's opined limitations where, among other things, the claimant was receiving conservative treatment); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x, 719, 727 (6th Cir. 2013) (minimal or lack of treatment is valid reason to discount severity); *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 931 (6th Cir. 2007) ("The ALJ properly considered as relevant the fact that [the claimant's] medical records did not indicate that [claimant] received significant treatment . . . during the relevant time period.").

In summary, the undersigned concludes that the ALJ did not err in his consideration and weighing of the opinion evidence, that any error in failing to limit Plaintiff to unskilled work is harmless, and that his decision is supported by substantial evidence. It is therefore **RECOMMENDED** that Plaintiff's contentions of error be **OVERRULED**.

## VI. DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of

13

Social Security's decision.

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

      /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE